People against Candace Brown. Counsel for a felon, you may proceed. Thank you, Your Honor. My name is Maggie Hines and I represent the defendant, Ms. Candace Brown. This is a direct appeal from a felon's conviction for obstructing justice. In the briefs, there are two issues. I'm going to focus on the first issue, but I have to take questions on either. Now, the problem in this case is that the state has effectively punished voluntary cooperation with the police because that cooperation was admittedly imperfect. Within the first 15 minutes of an initial and voluntary police interview, Ms. Brown broke the alibi of the sole suspect in a double murder, and she placed that suspect in direct contact with one of his victims. Officers were able to use this information to get a partial confession from the suspect in less than an hour. Yet the state still charged Ms. Brown with felony obstruction because she didn't help without hesitation, and she didn't help without misstep. This is not what the legislature had in mind when they crafted the felony of obstructing justice. Here, Ms. Brown not only did not impede a prosecution, she valiantly assisted it. Now, the charges in this case arose after a high-profile double murder in a small town. On August 26th of 2012, a young couple was reported missing from a campsite where they had gone fishing on a Saturday night. The next day, one was found dead and the other remained missing. Now, back in 2012, Ms. Brown was pregnant and living with her then-boyfriend, Mr. Danny Costin. On August 31st, four days after finding one of the bodies, police began to focus on Mr. Costin as a suspect because they found parts of his truck in the vicinity of the campsite. On the same day, Mr. Costin was questioned by police for the first time at around 4 p.m. He said that he was at home with Ms. Brown at the relevant times. Police then asked Ms. Brown to answer questions, and within the hour, she drove herself to the police station for a voluntary interview. Now, in the first 10 minutes, Ms. Brown did not tell officers that Mr. Costin had been alone near the river on the night in question. She at first said that he waited to go to the river until the next morning, and then she said that he did go down for 15 or 20 minutes that night, but that she had gone to find him. And when an officer asked, did you get him home, she said yes. Now, within a minute of saying yes to this, that she had gotten him home, she stopped and said, I didn't get him home. And it's at this moment that she describes going down and seeing Mr. Costin at the river, speaking to a strange man about a small dark truck. She confirms that she told Mr. Costin about this, which became important for the police in confronting Mr. Costin, and then he claimed he had no memory. She confirmed that she wasn't with Mr. Costin the entire night, but instead that he was alone for perhaps two hours. Now, throughout her police interview, which was about 40 minutes, Ms. Brown remained convinced and tried to convince the officers that Mr. Costin couldn't have done this, even though she couldn't alibi him, and even though he had been speaking to a stranger by the river. But despite believing that he was simply in the wrong place at the wrong time, she told police what they needed to know. And within 30 minutes of her interview ending, police confronted Mr. Costin with this information, and he, for the first time, partially confessed by saying that he spoke to both of the victims. He was there when both were shot. He, in fact, had shot one. And by the end of his interview, he agreed to leave police to the missing body. In the meantime, Ms. Brown was accompanying police for a voluntary consensual search of the home that she shared with Mr. Costin. And ultimately, Mr. Costin was convicted for both of the murders. Now, the state insists that it doesn't matter if Ms. Brown's voluntary statement helped the investigation rather than hurt it. This is because, according to the state, obstructing justice through a falsehood does not require evidence of material impediment or an actual obstruction to the prosecution or investigation. But case law shows otherwise. In 2011, the Supreme Court specifically considered the intent and the purpose behind the specific obstructing justice statute that's at issue in this case. And the court there reasoned that the legislature was seeking to criminalize behavior that actually impedes law enforcement. Now, the state points out that this case, which is People v. Comage, this was a case involving concealment of evidence, not furnishing of false information. But the Supreme Court, when interpreting the intent of the statute, wasn't focused on the word concealment. They were focused on the phrase obstructing justice and saying, what is the purpose of this statute? And it's then that they reached the conclusion that the legislature intended there to be actual impediment. Now, in 2012, the Supreme Court, in looking at a different obstruction statute, again said the obstruction statutes and the interference in officer statutes should be read harmoniously. And they determined that obstructing a peace officer through a falsehood would require proof of an actual impediment. Now, according to the state, obstructing justice does not require proof of an impediment when a falsehood is used, but it does require proof when a concealment is used. The state also believes that obstruction of a peace officer through a falsehood does require an impediment, but obstruction of justice through a falsehood does not require an impediment. That's not a harmonious reading of these statutes, which all share a subject matter. And importantly, obstructing a peace officer through a falsehood is a misdemeanor, while obstructing justice is a felony. It's irrational to think that the legislature wanted to require more proof, proof of an actual impediment for a misdemeanor, but not for the felony. Now, in 2012, the appellate court in a published decision applied Supreme Court precedent in finding that proof of obstruction is required for the offense of obstructing justice through a falsehood. And that's the exact offense that we have in this case. Now, notably, the legislature has been very responsive when police officers have been frustrated by the fact that the obstructing justice statute doesn't cover all falsehoods. And to that end, in 2010, the legislator created a new misdemeanor, which criminalizes obstructing identification. This is a misdemeanor which doesn't require the impediment, but instead makes lying to an officer about who you are and whether you have identification an automatic misdemeanor without regard to whether or not you are materially impeding their investigation. Now, there has been no attempt in the wake of the Supreme Court cases from 2011 and 2012, or in the wake of the 2012 appellate court case, to indicate that these courts have been wrong in requiring evidence of an actual impediment to an investigation before finding there was a felony obstruction of justice based on a falsehood. In short, the Supreme Court, the legislative history, they all show that felony obstruction requires proof of an actual obstruction, regardless of whether it's premised on falsehood or concealment. Now, in this case, the state's own evidence, their entire case, shows that Ms. Brown did not impede the prosecution of Mr. Costin. Instead, it shows that she helped it. She broke Mr. Costin's alibi. She placed him in direct contact with one of his nicknames. And she was the only witness who could do that besides the murderer, and she did it. Officers were able to use this information to confront Mr. Costin and get the admissions they needed to get him to plead guilty down the line. Now, Ms. Brown was under no obligation to speak to the police at all. She may not have been a perfect witness, and she wasn't forthcoming in the first 10 minutes of the police interview. She lied about getting Mr. Costin home after 20 minutes, but within 15 minutes of speaking to the police, she freely gave them the information they needed, even though she continued to believe that her then-boyfriend was simply a victim of being in the wrong place at the wrong time. It was as a result of cooperation that the police were able to get the confession that they needed. This is not obstruction of justice. This is human error in an intense, a stressful, and hopefully once-in-a-lifetime situation. The legislature didn't want to criminalize every falsehood in a police interview, and they wanted to criminalize actual obstruction of justice. But where there was no impediment to the prosecution of Mr. Costin, due to Ms. Brown's momentary weakness, this court should reverse the conviction outright. Now, alternatively, this court could remand for a new trial. The trial court in this case did not strike jurors for cause, including one who could not accept the fourth of the Zaret acknowledgements, the fact that the defendant need not testify on their own behalf, and where another juror who was actually seated doubted his ability to give Ms. Brown a fair playing field. Jeffrey Elliot was seated despite the fact that he had trouble both with the fourth Zaret acknowledgement, and more importantly, where he said that he had heard rumors about the Carmi case, but when questioned by the judge, said he could set it aside, and when questioned by a state's attorney, said that he doubted his ability to be fair, he used outside information. It was only when the judge again asked him a more general question about being fair that he said he could be. Now, Illinois courts, in cases like this, where there's a lot of pretrial publicity and a lot of emotions, have said trial courts should be cautious when denying motions to strike. And this is a case where nearly everyone in one year had heard about the Costin case, and almost as many had heard about Candace Brown's case, where Mr. Elliot had heard about Ms. Brown's case, and had heard gossip in town about it, and even questioned his ability to set that aside. The court should have set him aside when the defense moved to strike him for cause. If there are no questions? How would you square your argument in this case with the 4th District's decision in Peoples v. Davis, which was decided in the 4th District after the Camage case? I believe in the Davis case, the big difference is that the defendant was actively hiding a fugitive in her house, and the court, in finding that she had, in fact, impeded officers when she lied and said he wasn't in the house, even though it was a brief time, they noted that she only came forward and said, okay, he is in the house, when a third party intervened and basically said, I'm going to tell them if you're not going to tell them. I think the big difference here is that you're not actively hiding someone, and it was her own conscience that let her tell the truth. Okay, thank you, counsel. We have an opportunity for referral. Counsel for Appley. May I please report, counsel? Jennifer Camden on behalf of the people. The obstruction of justice statute states that a person commits that crime when,  he or she knowingly undertakes any one of a named series of acts, destroying evidence, altering evidence, planting false evidence, et cetera, or furnishing false information. And this court should affirm the defendant's conviction and sentence, because the plain language statute did not require the state to prove that the defendant's false information, which she provided, materially impeded the prosecution of Costin. Now, the state is arguing in the alternative that the state did require that, but I want to focus first on the discussion of the elements. Now, the defendant argues that the Comidge case discussed the legislative intent of the obstruction of justice statutes in general, so that it applies equally here, that the discussion wasn't focused on concealment. The reason that Comidge was discussing the intent behind the obstruction of justice statute was that Comidge was trying to define the word concealment. The defendant in that case was charged with obstruction of justice under a concealment theory, not a furnishing false information theory. The court stated that the word concealed was not defined in the statute and proceeded to try to define the word conceals by resorting to the dictionary and by looking at the legislative intent behind obstruction of justice statutes. And it was based on that analysis that the court defined the word conceals in the way that it did. Now, conversely, in this case, the defendant was charged with furnishing false information. Now, she's not arguing that that phrase is ambiguous. She's not arguing that a reviewing court needs to examine legislative intent in defining the phrase furnishing false information. If she was, then this court could and presumably would examine the legislature's intent in defining that phrase. But she's not arguing that she didn't furnish false information within the meaning of the obstruction of justice statute. So there's no basis for importing the definition of conceals here. The defendant's arguing that the State's argument was rejected in Comidge and that the State's argument is taken from the dissent in Comidge. But this is- You're saying concealed false information? So how many times did the police ask questions about, well, what did you see on the night of whatever? And the people, I didn't see anything. Or there's 43 people in the girls' bathroom. You know, who knows? So does that mean that all those people should be arrested for obstruction because they didn't see anything? Because they, well, they're not telling the truth, but they just didn't see anything. That happens every day, thousands of times. Should they be convicted of this charge? Well, Your Honor, the intent element of the statute requires furnishing false information with the intent to obstruct. Well, they're obstructing, aren't they? No, I didn't see anything? Well, I- I didn't see a shot out of that car when they're coming down the street. I didn't see that car. Well, the defendant did more than that here. Well, I'm not worried about that. I'm worried about some other cases. Yeah. How about the 7,000 cases? What do you say? Yeah. Isn't that obstructing? Well, the defendant- They saw it, but they're not telling. Yeah. I mean, the defendant here isn't arguing that she didn't intend to obstruct. I really think, Your Honor, that it's a good thing. Well, these other people didn't either. I beg your pardon? What about the other cases? At least, I didn't see anything. Okay. How many times have you heard that? If you listen to the news, it's every night about 10 times. Nobody saw anything. Well, Your Honor, prosecutorial discretion is always an issue. And, again- That's not the question. The question is, is that obstruction by your definition? In this case, the defendant was charged with obstructing justice for furnishing false information with the intent- Well, the false information would be, I didn't see anything. We could argue about whether that constitutes intent to obstruct prosecution. I mean, I think that the appellate court in the Gray case discussed the fact that the penalty for obstruction of justice is broad enough to encompass questions of recantation. But, in this case, the defendant affirmatively provided an alibi for a murder suspect. But then recanted before the interrogation was over, correct? Recanted before the interrogation was over? Well, she changed her story. In these other cases, they don't ever say anything. I beg your pardon? The other cases I'm trying to get you to talk about, they never recant. They just go on. Oh, which case is that, Your Honor? What's Tompino night? 5 o'clock. See what you think. Is that obstruction of justice to say I didn't see anything when I did see something? I just, I don't know how to answer that question. Okay. I mean, under the statute, furnishing false, if that's false- That's false information, isn't it? If it's filled with the intent to obstruct a prosecution of a particular person, then I think that there's an argument to be made there. But I do want to point out that the court in Gray discussed the intent element of that statute as broad enough to encompass objections such as the objection that a defendant later recanted. And the court in Gray stated that a conviction will stand where there's sufficient evidence that a defendant furnished false information with the requisite intent, and that that intent is established at the time that the false information is provided. So the defendant's argument that she later recanted would perhaps be relevant to the issue of sentencing. So then basically it's burden of proof. If you don't recant, you're not guilty. It's burden of proof. You can't prove it because she recanted. Most of these other cases, you can't prove anything because they won't say anything. Well, I think- If they recant, then you arrest them. Well, I think I'd have to disagree with that because there are many ways to prove. I mean, defendants get convicted of crimes every day that they never admit to committing or that they deny committing. Counsel, let me turn your attention to another question, which is the material and impeding. What evidence is there and whatever evidence is there in the record that shows that this defendant did material and impeding? Well, Your Honor, the sheriff testified that by the end of the interview, police still were not certain as to which parts were truthful and which parts weren't, and that police spent, quote, many hours trying to verify what the defendant said and never knew if she told the whole truth. He and the other officer also testified more broadly about stating that the furnishing of false information always impedes a prosecution because when a witness is untruthful, they have to- police have to focus on disproving a witness's statements and tend not to believe anything that the witness says. And so the police did testify that they were impeded in that way here. I also want to push back on the defendant's assertion that it was her information that caused Costin to give an inculpatory statement. Costin gave an incriminating statement after being confronted with the defendant's- with some information that the defendant had provided about half an hour later. But that doesn't necessarily prove causation. It just shows that something happened after something else. Was there something that the officer said to cause her to be more forthcoming? Well, Your Honor, I argue- I argue so. I argue in the answer brief that the transcript of the interview shows that the defendant first stated that she- that Costin was home with her all night and that she had called him one- or that he had called her one time on his cell phone after they had come home from the bar at about 12.30 or 1 o'clock. And when the officer asked to see her cell phone records, that's when her story changed. That's when she stated, oh, well, actually he was out a lot longer and he and I made multiple phone calls back and forth that night, or she called him multiple times that night before finally getting a hold of him or going out to find him. So while- well, it's- and that is an interesting parallel between this case and the Davis case in which the court found it notable that the defendant had changed her story not because of some internal pressure but rather because of external pressure because someone else said that he would tell if she didn't. But regardless of how much help the defendant was there, she still impeded the investigation. Let me finish your thought. At the time that she furnished the false information, and I just want to point the court to the appellate court statement in Davis that it was sufficient that the defendant impeded the investigation at the time that she misled them by lying. Thank you, counsel. Rebecca? So, Justice Walsh, I think that absolutely you would be guilty of obstructing justice if you said, I didn't see anything. If you saw a drive-by shooting, you saw the make and model of a car, you don't know who the defendant is driving in, but you know information that can go towards a prosecution, and you don't want to get involved. So with the intention of not getting involved in that prosecution, you lie and say you didn't see anything. And that's all there is to it. And the problem here is that Candace Brown decided that she had a conscience and she recanted. That's what offered the proof that makes her a felon, a first-time felon, is because she recanted. That's all the proof that the state needed, and that's what's so distasteful about the way the obstructing justice statute was used, particularly because it wouldn't be possible if she had concealed enough evidence. If she'd been a drug dealer running down the street and threw evidence, drugs, over a privacy fence, not guilty. That's no material impediment. But because she says, you know, he was asleep. Well, he was outside. I didn't get him. I saw him talking to a stranger. Suddenly, she's a felon, while the drug dealer is not guilty of obstructing justice. I don't think that's how the legislature intended for the statute to operate, and I don't think this court needs to narrowly construe homage to completely ignore a statement on the purpose of the statute. When you interpret the plain meaning of the statute, you're meant to look at the statute in its entirety with its purpose in mind. And it's only by completely divorcing the statute from its purpose that you can get to the place where Candace Brown is guilty because she recanted, but the drug dealer, he's not guilty. Or the people lying by the drive-by, they're not guilty, but Candace Brown is somehow more guilty. Wasn't the recantation also presented to the jury as a defense? It was not presented as a defense. The defense counsel was arguing that this recantation should mean that there would be a directed verdict where the state could not have the evidence or did not have sufficient evidence. And the evidence in the recantation was before the jury, but they rejected it, but they weren't told that recantation... It was argued to the jury. That's my point. It was not argued that the state needed to show there was a material impediment, but the facts were before the jury, if that makes sense. That was my point. The facts were argued that she did recant, and the jury had the proper instructions on intent and knowing. Is that correct? They had the jury instruction, which I think currently does not give room for material impediment because it hasn't been updated in light of homage. Now, the jury sent back a question where they asked, does obstruction of the prosecution mean a hindrance? So I think that shows that the jury was wrestling with, well, how does this exactly fit in? How do you respond to counsel's argument about the material impediment? So it was Sheriff Meyer and Agent White, I believe, that both testified that were in the interview, and defense counsel pushed them on, well, you said you had to get phone records. The big things they said, they said, we had to get phone records and we had to re-interview Danny Costin. But they both admitted they would have done both of those things regardless if Candace Brown had spoken to them. Those are routine measures. And I think notably, they had to speak to Danny Costin after speaking to Candace Brown, not because she verified his alibi, but because she didn't verify his alibi. The fact that Candace Brown broke his alibi and said, he was talking to a stranger by the river, and I told him he was, even though he said he didn't remember that. Those are the things that mean we have to go confront Danny Costin with this. So needing to go interview someone else, you can't somehow attribute that to a falsehood. They had to do that as regular police work, and they were able to do it very effectively because of the information that Ms. Brown provided. I'd also like to point out, you were asking about the Davis case and what's the difference between the impediment there versus the impediment here. I think if you look to the Graves case, where they talk about, maybe there's that unusual case where there's a recantation that comes so quickly that there can't, in that case, they're pursuing it as a defense, but maybe there's a recantation that's so quick. In that case, they did not allow them testimony at all, did they? They didn't. In that case, there were five interviews. The first two interviews happened, 18 hours passed from the first one. In the third interview, the defendant said a few things that sort of implicated the two people could have been where the murders occurred, and then had two more interviews, where I believe she backed off from what she said in the third interview. She refused to testify against the defendants, and then she wanted to say, well, because in that third interview, 18 hours after my first, I said what could have been the truth. I think I should be able to raise this as defense. I think that's not that special case. That's five different police interviews. A witness who will cooperate here, one interview. Wasn't that a matter of four hours? Well, it was four hours from the second interview, 18 hours from the first interview. So they brought her in at three separate times. Here, we're talking initial interview. Thank you. Thank you, counsel. The court will take this matter under advisement and issue a decision in due course. Final case of the day.